IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

BENJAMIN J. JONES                                                                    PLAINTIFF

V.                                                           CIVIL ACTION NO. 2:05CV184-P-A

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                       DEFENDANT

## REPORT AND RECOMMENDATION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Benjamin J. Jones for disability benefits under Title II of the Social Security Act. The district court's jurisdiction over plaintiff's claim rests upon 28 U.S.C. § 1331.

### STATEMENT OF THE CASE

Plaintiff Benjamin J. Jones filed his application for disability insurance benefits[1] on February 3, 2003, alleging that he became disabled on March 8, 2002, due to problems and pain within his knees and fluid on his patella, which medical records indicate as osteoarthritis of the knee.[2] The plaintiff completed the tenth grade; however, the plaintiff testified that the high

---

[1]The plaintiff's complaint states that he filed an application for "a period of disability, disability insurance benefits, and supplemental security income" and "[b]y Order entered March 29, 2005, it was held that the Plaintiff was not entitled to a period of disability, disability insurance benefits, or supplemental security income." Brief at 3. A review of the record indicates that the plaintiff did apply for SSID under Title XVI of the Act on February 13, 2003, and that this application was denied that same day. R. at 65, DIB Review Sheet. Consequently, this appeal and the underlying March 29th Order relate solely to the plaintiff's claim for disability insurance benefits under Title II. *See, e.g.,* R. at 14, Order; R. at 25, State Disability Determination; R. at 38, Notice of Reconsideration.

[2]Plaintiff later alleged lower back pain, which the ALJ considered in rendering the March 29th decision.

school advanced him due to football abilities and that he is illiterate, an assertion with which the Administrative Law Judge (ALJ) agreed in rendering his decision. Plaintiff's claim was denied initially and on reconsideration, and plaintiff requested a hearing before an ALJ. The plaintiff's hearing on this matter was held before ALJ William Shilling on March 5, 2005. The plaintiff was forty-six years of age – and is thus considered a younger individual – when the ALJ rendered his decision.

In his decision dated March 29, 2005, the ALJ found plaintiff's alleged impairments were severe, that he was unable to perform his past relevant work, that he was capable of performing the full range of light work activity,[3] and that he was capable of performing a significant number of jobs within the national economy despite his lack of transferable skills and literacy level. Consequently, the ALJ held that the plaintiff was not disabled within the meaning of the Social Security Act. The plaintiff's request for a review of this decision was denied by the Appeals Council on July 19, 2005; thus, the ALJ's decision became the final decision of the Commissioner and was appealed to this court.

Plaintiff's brief contends that the ALJ committed reversible error by (1) failing to determine whether the plaintiff understood that he needed an attorney and (2) disregarding the opinions of plaintiff's treating physician.

## DISCUSSION

A.  <u>Standard of Review</u>

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence in the record as whole and whether the Commissioner used the correct legal

---

[3]Although the ALJ's finding number eleven states that plaintiff "has the residual functional capacity to perform the full range of light work," (R. at 19), this finding contradicts his earlier statement that plaintiff's "ability to perform light work is reduced by the additional exertional and non-exertional limitations established by the evidence." (R. at 18.)

2

standard. *Legget v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103, 108 (2000)). However, a decision is not substantially justified if the facts are not fully and fairly developed. *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (citing *Newton v. Apfel*, 208 F.3d 448, 458 (5th Cir 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence leans against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

  B. <u>Five-Step Sequential Evaluation Process</u>

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels, the burden then shifts to the

Commissioner at step five. *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). First, plaintiff must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1527. Second, the plaintiff must prove his impairment or combination of impairments is "severe" in that it has more than a minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1527; *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). At step three, the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(d). Fourth, the plaintiff bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work. 20 C.F.R. § 404.1520(e). If the plaintiff is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work. 20 C.F.R § 404.1520(f). If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff must then prove that he cannot, in fact, perform that work. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

    C.    <u>Waiver of Representation</u>

Plaintiff claims that in light of his illiteracy and intelligence level, the ALJ erred in failing to determine that plaintiff should have been represented at the hearing. The long-standing rule of this and the majority of other courts is that the absence of attorney representation at the underlying administrative hearing cannot alone constitute grounds for remand absent prejudice or unfairness. *See, e.g., Cross v. Finch*, 427 F.2d 406, 408-09 (5th Cir. 1970). Plaintiff's brief acknowledges this rule and cites other, non-binding case law regarding other situations, which

the court finds are merely examples of that which would constitute unfairness under the above-cited rule. However, plaintiff fails to demonstrate – nor does the court find – any unfairness or prejudice that he suffered as a consequence of not being represented by counsel. Plaintiff's brief cites dialogue between the ALJ and himself which only serves as proof that the ALJ discussed with the plaintiff his right to representation as opposed to relying upon the communications previously sent to plaintiff that expressed this right.

The brief also quotes dialogue between the ALJ and plaintiff's wife, which, taken alone, appears troublesome. However, it is clear from the <u>entire</u> conversation between plaintiff's wife and the ALJ that she conveyed to the judge that specific symptoms were not included within the medical records contained within the record, not that there were certain medical records missing from the record. More importantly, the court finds from a reading of the record as a whole that plaintiff's wife, who is literate, aided him throughout the entire claim process, that the plaintiff adequately understood the procedures involved, and that he seemed to understand the questions being posed to him at the hearing and adequately responded to these questions. For all of these reasons, the court finds that this point of error is without merit.

  D. <u>Treating Physician's Opinions</u>

The plaintiff's second assignment of error argues that the ALJ improperly disregarded the opinions of the claimant's treating physician Dr. Clifton Rodgers. First, plaintiff takes issue with the following portion of the March 29th decision:

> However, claimant testified that Dr. Rodgers completed the form while asking him the answers to the questions. Acceptable clinical and laboratory diagnostic techniques are the preferred method of determining claimant's residual functional capacity. And the treating physician's opinion can only be given controlling weight when they [sic] are so supported.

Brief at 8 (citing R. at 17).

Plaintiff contends that he did not testify that Dr. Rodgers completed the questionnaire while asking the plaintiff the questions on the form. In making his argument, plaintiff's brief mistakenly relies upon a portion of the hearing transcript on page 162 of the record wherein plaintiff answered that "he [Dr. Rodgers] said, I got paper that he filled out for me in, in this folder. And, he just said it was pain I was going to have all the time." However, the court finds that is more likely that the ALJ based this finding on the following dialogue:

> Q: It was February 2nd of 2004. That's a year ago. A year ago. Do you remember going seeing the doctor and - -
>
> A: Yes, sir.
>
> Q: Did he go over that form with you and ask you those questions? Or, did he just - -
>
> A: Yes, sir.
>
> Q: Okay. So a lot of this information is what you told him?
>
> A: Yes, sir.
>
> Q: Have you been back since February of '04? A year ago?

R. at 172.

The court finds that this question-and-answer series is too ambiguous to form a reasonable basis for the proposition that in completing the RFC Dr. Rodgers took into account only the plaintiff's responses to the questions posed by the form and relied upon none of his own professional findings or skills in doing so. The fact that Dr. Rodgers asked the questions presented on the form does not alone demonstrate that Dr. Rodgers – without any analysis or input on his part – simply answered the questionnaire with the patient's responses to the questions. As for plaintiff's response that much of the information provided on the form was

told to Dr. Rodgers by plaintiff, one could reasonably interpret his answer as meaning only that Dr. Rodgers formed his opinion after taking into account the information that he, the patient, had previously given the physician.

This error is subsumed into the larger, remaining issue of whether the ALJ drew his residual functional capacity assessment in accordance with applicable regulations and case law. The ALJ began his RFC analysis with the typical recital of that which the ALJ must consider, such as pain and opinion evidence. He then launched into his analysis as follows:

> Claimant reports that he cannot work because he has to lie down most of the day. He testified that he can lift two gallons of mild [sic] as long as no bending is involved. Claimant's testimony is found to be credible, but it is not supported by the medical evidence in the record. He asked Clifton Rodgers, M.D. to complete a residual functional capacity questionnaire for him, and Dr. Rodgers stated that claimant could not work an 8-hour day five days a week. He listed the cause as severe pain leaving claimant able to lift or carry less than 5 pounds. He also noted swelling of both claimant's knees and his lower back pain (Exhibit 4). However, claimant testified that Dr. Rodgers completed the form while asking him the answers to the questions. Acceptable clinical and laboratory diagnostic techniques are the preferred method of determining claimant's residual functional capacity. And the treating physician's opinion can only be given controlling weight when they [sic] are so supported (see SSR 96-2P).
>
> Additionally, Dr. Earnest B. Lowe, Jr., M.D. saw claimant in December 2004. Dr. Lowe noted mild crepitus in claimant's knees and mild to moderate arthritis in x-rays, but found no malfunction or abnormality of the knees. He also opined that claimant should still be capable of employment (Exhibit 5F).

R. at 16-17. The ALJ then concluded that the plaintiff retained the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently; to sit, stand or walk approximately six hours of an eight-hour workday; to occasionally climb excepting ropes or scaffolding, balance, stoop, kneel, crouch and crawl. R. at 17.

In order for the ALJ's assessment of a plaintiff's residual functional capacity to be sustained, the ALJ must "consider all allegations of physical and mental limitations or

7

restrictions" and include within his decision "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Social Security Ruling 96-8p. An ALJ may reject or assign little weight to the opinion of a treating physician when good cause is shown; good cause may exist "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000) (internal citations omitted).

An ALJ must also consider the claimant's subjective complaints of pain in determining the plaintiff's residual functional capacity, and it is improper for an ALJ to make no finding as to the plaintiff's subjective complaints of pain where the plaintiff would be entitled to benefits if his claims were believed. *Carrier v. Sullivan*, 944 F.2d 243 (5th Cir. 1991). It is within the ALJ's discretion to consider subjective evidence of a claimant's impairments in light of objective medical evidence, and his determinations are entitled to considerable deference. *Wren v. Sullivan*, 925 F.2d 123, 128-129 (5th Cir. 1991). An ALJ may discredit a plaintiff's complaints of pain in light of medical reports, daily activities and the use of medications. However, Social Security Ruling 96-7p requires that the ALJ base his determination on specific, express reasons. "If the uncontroverted medical evidence shows a basis for the claimant's complaints of pain, the ALJ's unfavorable credibility determination will not be upheld 'unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain.'" *Wilson v. Barnhart*, 129 Fed. Appx. 912, 914 (5th Cir. 2005), citing *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989).

The decision in this case did not explicitly assign significant weight to any medical opinion. The ALJ's RFC determination lies somewhere in the spectrum between Dr. Rodger's RFC and Dr Lowe's RFC and mirrors the assessment of medical consultant Dr. Glenn E. James though the decision never mentions Dr. James. One troubling feature of the ALJ's decision is a conflict between his statement in the body of the decision that plaintiff's testimony was credible, though unsupported by medical evidence, and a later finding that the plaintiff's testimony was <u>not</u> credible.[4] Nor does the ALJ ever explain the weight that he afforded plaintiff's credible testimony given its unsupported nature.

More importantly, the decision does not make any specific finding as to plaintiff's allegations of pain. The plaintiff made serious allegations during the administrative hearing of limitations imposed upon him by pain, and the medical impairments attributed to plaintiff clearly are of a type which are capable of producing such pain. The decision also fails to discuss how evidence such as medical findings, testimony, or other documents supports <u>each</u> component of the ALJ's residual functional capacity assessment. The objective medical records do little to indicate the effect of plaintiff's impairments on his ability to work. Other than the ALJ's rejection of Dr. Rodgers's RFC findings discussed above, the decision itself contains no analysis of Drs. Rogers's or Lowe's findings, even though both stated they were based on objective medical evidence.

---

[4]Item five of the findings section of the decision states, "the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision." R. at 19. However, the credibility finding within the body of the decision states, "[c]laimant's testimony is found to be credible, but it is not supported by the medical evidence . . . ." R. at 16. The court relies upon the positive credibility determination located within the ALJ's actual analysis as opposed to the more negative determination as the sentence as a whole suggests that no language was inadvertently omitted and because it was drafted specifically for this opinion as opposed to the rote language of the findings section.

The undersigned cannot deem these omissions harmless error when considered in the aggregate, especially given the facts that the decision explicitly found that the plaintiff was credible, that the opinion wholly failed to discuss pain, that the decision expressed an unsupported finding that plaintiff's treating physician simply completed the RFC questionnaire as the plaintiff wanted. Consequently, the court recommends that the case be remanded to allow the ALJ to address the plaintiff's testimony as to pain, Dr. Rodger's method of responding of the RFC questionnaire and how the evidence supports each component of the ALJ's RFC assessment.

## CONCLUSION

The undersigned recommends that the Commissioner's final decision be reversed and remanded. The parties are referred to 28 U.S.C. §636(b)(1)(B) and FED. R. CIV. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date and "a party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Association* , 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*) (citations omitted).

Respectfully submitted, this, the 13th day of June, 2007.

    /s/ S. ALLAN ALEXANDER
    UNITED STATES MAGISTRATE JUDGE